UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AMANDA MOUNTS,
on behalf of JOSEPH D. MOUNTS,    )
    )
       Plaintiff,    )
    )
    v.    )    Case No. 3:17-CV-155
    )
NANCY A. BERRYHILL,    )
Acting Commissioner of Social Security,    )
    )
       Defendant.    )

## OPINION AND ORDER

Amanda Mounts brings this case on behalf of her deceased husband, Joseph D. Mounts, appealing the denial of his claim for Social Security Disability Insurance Benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

Mr. Mounts filed his initial application for benefits on April 4, 2013, alleging disability beginning March 19, 2013. His application was denied initially, on reconsideration, and following an administrative hearing in August 2015 at which he was represented by counsel. At that hearing, the ALJ heard testimony from Mr. Mounts and vocational expert Richard Fisher. The ALJ found that Mr. Mounts had some severe impairments but could still perform certain jobs available in the national and regional economy, and he was therefore not disabled within the meaning of the Act. See 20 C.F.R. § 416.920(g). The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner. Mr. Mounts died in August 2016, and his wife now brings this claim on his behalf.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; she may not ignore an entire line of evidence that is contrary to her findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, she must provide a "logical bridge" between the evidence and her conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**DISCUSSION**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that

there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The main thrust of Mrs. Mounts's brief focuses on two related arguments. First, that the ALJ improperly determined that the information contained in sixty-five pages of medical records submitted after the state psychologists' review would not have warranted a change in the reviewers' opinions and did not impact the weight afforded to those opinions. And second, that those new medical records included a report of Mr. Mounts's treating physician, Dr. Kathleen Miller, to which the ALJ improperly afforded little weight as unsupported by the record and by Dr. Miller's own treatment notes. Mrs. Mounts also argues that the ALJ improperly assessed Mr. Mounts's credibility, and that the residual functional capacity (the "RFC") did not address all of his limitations.

## A.     New Medical Records and the Reviewing Psychologists

The ALJ afforded "substantial weight" to the opinions of the state psychological consultants, who reviewed Mr. Mounts's file in November 2013. The reviewing psychologists, however, did not have access to a significant amount of medical records, which were submitted after the review. The ALJ made note of these new submissions, but determined that they were "consistent with the evidence reviewed by these doctors in that the claimant continued to have functionally intact mental examinations." (R. 28). The ALJ further opined that "[t]here was no indication that the claimant's condition substantially worsened. The claimant has been friendly, pleasant, and/or cooperative. His memory, attention, and concentration have also been fair to good." *Id.*

In drawing this conclusion, the ALJ erred in two respects. First, the ALJ impermissibly engaged in "cherry picking" facts from the medical records that supported her RFC finding while

ignoring many others. The ALJ cited and discussed various "normal" observations from the new records, such as Mr. Mounts's "friendly, pleasant, and/or cooperative" presentation and his "fair to good" memory, attention, and concentration, without mentioning several other findings supporting the fact that Mr. Mounts's mental disorders were causing further impairment. For instance, in the fall of 2014, Mr. Mounts reported to Four County Counseling Center ("FCCC") as experiencing weekly hallucinations (auditory and visual) and had confined himself to his house for the previous year and a half due to anxiety and paranoia. (R. 393-94). He was also experiencing sustained panic attacks daily. *Id.* He then underwent regular treatment at FCCC for his mental health issues through the summer of 2015. During that time, Mr. Mounts experienced "excessive amounts of paranoia" to such a degree that he had to force himself out of the house to attend counseling, suffered from "erratic" sleep patterns, and remained unable to shake his anxiety when around other people. (R. 398-99, 427-28, 434, 436, 439). He also experienced daily depression. (R. 421). In January 2015, he informed his nurse practitioner that "[t]hese anxiety attacks are not any better;" his anxiety was so great that he even avoided family holiday gatherings for fear of being around others; he felt "boxed in" and "overwhelmed." (R. 428, 439). By late April 2015, Mr. Mounts's anxiety was getting even worse, and as late as May 2015, he reported as still experiencing symptoms of paranoia such that he would only leave the house to play with his children in his own yard. (R. 442, 444). The ALJ considered none of this when concluding that the new medical records would not impact the reviewing psychologists' evaluations. Thus, she improperly discussed only those clinical observations that backed her RFC determination, while neglecting to mention evidence from the same records that supported Mr. Mounts's allegations. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to

a disability finding.); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not enough for the ALJ to address mere portions of a doctor's report.").

Second, the ALJ offered no explanation as to *how* the new medical records indicated that Mr. Mounts remained "functionally intact" and that his condition did not "substantially worsen." (R. 28). In essence, the ALJ improperly "played doctor" here by substituting her own knowledge for that of the trained physicians and medical staff and supplanted their medical opinions with her own. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (The ALJ may not "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.). Although an ALJ is allowed to "reject physicians' opinions if she relies on other medical evidence and testimony and explains why that evidence points away from the opinions," *Featherstone v. Colvin*, No. 13-CV-6559, 2016 WL 147655, at *6 (N.D. Ill. Jan. 13, 2016), the ALJ here made an unsupported lay-person assumption that the "normal" clinical observations were sufficient to undermine medical opinions that consistently documented Mr. Mounts's significant psychiatric symptomology and resulting limitations. For instance, the ALJ did not rely on a medical opinion to support her finding that Mr. Mounts's general friendliness and cooperation during appointments is sufficient to call into question repeated observations concerning his paranoia and social anxiety. In short, the ALJ failed to provide the requisite "logical bridge" connecting her conclusions with the actual evidence of record, including those clinical findings and observations rendered by medical professionals. *Terry*, 580 F.3d at 475.

The ALJ erred by relying on her own "uncritical acceptance" of the reviewing psychologists' conclusions. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The reviewing psychologists did not have a chance to scrutinize the post-2013 FCCC medical records, and so their findings should not have been given substantial weight without proper analysis. *See id.*

(remanding where reviewing physicians had not seen a later medical report that undermined their conclusions). This requires remand.

## B.      Dr. Miller's Report

The new medical records discussed above also contained an April 2015 report from Dr. Kathleen Miller, one of Mr. Mounts's treating physicians at FCCC. The ALJ gave Dr. Miller's report "little evidentiary weight," however, because it was "simply not supported by the record as a whole, including her own treatment notes." (R. 28).

An RFC assessment is to be based upon consideration of all relevant evidence in the case record, including medical evidence. SSR 96-5p. With respect to medical evidence, the ALJ must give controlling weight to a treating physician's opinion if it is well supported by medically acceptable diagnostic techniques and it is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415.[1] When the treating physician's opinion is not entitled to controlling weight, however—such as where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence. *See* 20 C.F.R. § 404.1527(c)(2).

Assessing what weight to afford the opinion depends on a number of factors, such as the examining relationship (with more weight given to an opinion of an examining source); the treatment relationship, which includes the length, frequency, and nature of the treatment; the degree to which the source presents relevant evidence to support the opinion; the consistency of

---

[1] The applicable regulations have since been amended, but those amendments do not apply here because Mr. Mounts filed his claim prior to March 27, 2017. 20 C.F.R. § 404.1520c.

the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. 20 C.F.R. § 404.1527(c); *Elder*, 529 F.3d at 415. If the ALJ discounts the treating physician's opinion after considering these factors, her decision must stand as long as she "minimally articulated [her] reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Dr. Miller reported that Mr. Mounts's paranoia and anxiety "greatly impact[ed] his day to day functioning," caused him "daily strife in carrying out daily activities, and "greatly increase[d]" when he found himself in "new social situations with unknown people." (R. 404-05). In doing so, she identified several of Mr. Mounts's symptoms and limitations, which notably included: blunt, flat, inappropriate affect; generalized persistent anxiety; mood disturbance; marked difficulty thinking or concentrating; paranoid thinking or inappropriate subconscious; persistent irrational fear; perceptual or thinking disturbances; and an "extreme" difficulty in maintaining social functioning overall. (R. 403, 407). Dr. Miller concluded that Mr. Mounts's mental impairments would render him off task for more than 41% of the workday, and would result in him being absent from work more than four days out of every month. (R. 406, 408).

The ALJ's rationale for her statement that Dr. Miller's opinions are unsupported by the record spans two sentences:

> The claimant has frequently exhibited a normal or appropriate mood and affect. He has also often denied paranoia, hallucinations, or delusions, and his thought process has frequently been normal.

(R. 28). This explanation is lacking for several reasons. First, the ALJ again failed to explain or even identify the many conflicting observations recorded in the medical notes from Mr. Mounts's treatment at FCCC during 2014-2015, discussed above. She therefore did not adequately articulate why Dr. Miller's opinion should be discredited as inconsistent with the record. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (remanding where ALJ's opinion did not reflect that he resolved an apparent evidentiary conflict between treating physician's report and other physicians' opinions). Second, the ALJ discounted Dr. Miller's report while making no mention of its contents whatsoever. For example, the ALJ simply states that the record does not line up with Dr. Miller's "own treatment notes," but does not identify which notes she is referring to, nor how their contents conflict with the record. This omission made it impossible for the ALJ to provide good reasons for rejecting Dr. Miller's opinion, as required. *See id.* (remanding because "the ALJ's failure to address [the treating physician's] report in its entirety prevents this court from tracking the ALJ's reasons for discounting it"); *see also Myles*, 582 F.3d at 678 ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'") (quoting *Clifford*, 227 F.3d at 871).

The Court cannot find that the ALJ offered good reasons, supported by substantial evidence, for giving little weight to the opinion of Mr. Mounts's treating physician, so remand is also warranted on this point.

**C.      Additional Considerations on Remand**

Related to the issue of weighing treating physicians' opinions, on remand, the ALJ may also consider whether she gave the appropriate amount of weight to the opinions of the state agency medical consultants and treating healthcare providers Teresa Perkins (a nurse practitioner) and Dr. Lisa Ronback. The ALJ awarded "some evidentiary weight" to all of these individuals'

opinions, but only "to the extent they are consistent with the findings [contained in the ALJ's opinion]." (R. 28). This language implies that the ALJ first determined the RFC, and then accepted or rejected the medical opinions based on whether those opinions fit the RFC, which is reversible error. *See Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012) (remanding where ALJ found claimant's symptoms not credible "to the extent they are inconsistent" with the RFC determination, because said language "implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.").

On remand, the Court also invites the ALJ to consider whether the limitations in her RFC are appropriate and well-founded. Specifically, when considering the new medical records and Dr. Miller's report in light of this Order, the ALJ may wish to revisit whether her finding that Mr. Mounts was moderately limited in social functioning is adequately supported by the record as a whole. (R. 24, 25). Furthermore, the Court invites the ALJ to reexamine her conclusion about Mr. Mounts's credibility. For example, with respect to Mr. Mounts's physical capabilities, the ALJ found his allegations not entirely credible based in part on her observation that "at one point he attempted to carry a stove on some stairs." (R. 27). However, what physical exertion Mr. Mounts *thought* he could do and what he could *actually* do are two separate things. Indeed, Mr. Mounts tried to carry the stove, but ended up falling with it down some stairs, resulting in injury that required treatment. (R. 511).

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  July 2, 2018

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court